# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

| | |
|---|---|
| In the Matter of the Search of <br> *(Briefly describe the property to be searched or identify the person by name and address)* <br><br> A BLUE MOTOROLA CELLULAR TELEPHONE, TYPE N57C9, CURRENTLY LOCATED AT 201B ETHERIDGE ROAD, MANTEO, NC 27954 | ) ) ) ) ) <br><br> Case No. 2:21-MJ-1013-KS |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ North Carolina _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Conspiracy, distribution, and possession with intent to distribute controlled substances |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Christopher A. Hedges, FBI Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 2/22/2021 _____

_____
Judge's signature

City and state: _____ Greenville, North Carolina _____

Kimberly A. Swank, United States Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLUE MOTOROLA CELLULAR TELEPHONE, TYPE N57C9, CURRENTLY LOCATED AT 201B ETHERIDGE ROAD, MANTEO, NC 27954 | Case No. |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Christopher A. Hedges, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, being duly sworn, depose and state under oath as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent (SA) of the United States Department of Justice, Federal Bureau of Investigation (FBI). I have served as a Special Agent for the FBI since September, 2004. As such, I am "an investigative or law enforcement officer of the United States," within the meaning of Section 2510(7) of Title 18, United States Code (U.S.C.); that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 U.S.C. § 2516. Currently, I am assigned to the Manteo Resident Agency in the Charlotte Division. I am responsible for conducting a range of criminal investigations, including the investigation of the illegal sale and distribution of controlled substances, as well as organized crime. I have been assigned to the Manteo Resident Agency since November, 2016. Prior to my current assignment, I was assigned to the FBI Chicago

1

Field Office for approximately nine years and the Fayetteville, North Carolina (NC) Resident Agency for approximately three years. Prior to joining the FBI, I served in the United States Marine Corps from approximately October 1998 through September 2004.

2. I have received specialized training in the enforcement of laws concerning controlled substances, firearms, and gang activity while employed as a Special Agent. I have been personally involved in a significant number of narcotics investigations, and as such, I am familiar with the various methods used by narcotics traffickers to communicate, transport, store, and distribute narcotics and narcotics proceeds. I have participated in investigations involving various drug types, including heroin, cocaine, and cocaine base in the form of crack cocaine. I am familiar in the manners of which narcotics are manufactured, remanufactured, and packaged for sale. I have experience with a wide range of investigative techniques, including various types of visual and electronic surveillance; the interception of wire communications; the use of consensual recordings; the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances; facilitating controlled purchases and deliveries of narcotics; the execution of search and arrest warrants; the management and use of informants; and the utilization of undercover agents/officers.

3. I have worked with numerous District Attorney's Offices, State Attorney General's Offices, and the United States Attorney's Offices, in preparation of cases involving controlled substance violations. During my career, I have testified

2

numerous times in Federal Court for cases that have resulted in convictions for violations of the Controlled Substance Act as found in Title 21 of the U.S.C.

4.     This affidavit is being made in support of an application for a search warrant for the following cellular telephone, which was seized from Maurice WYNN and is described further in Attachment A:

>   a.   A blue Motorola cellular telephone, Type N57C9, in a black case, labeled Case Number 245D-CE-2153493, Evidence Number 1B 204, collected from Maurice WYNN, hereinafter "Device 1." Device1 is currently located at the FBI Manteo Resident Agency, 201B Etheridge Road, Manteo, NC 29754.

5.     The applied-for warrant would authorize the forensic examination of the aforementioned cellular telephones for purposes of identifying electronically stored data particularly described in Attachment B.

6.     Probable cause exists to believe that the requested information will constitute or lead to evidence concerning offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846, as well as the identification of individuals who are engaged in the commission of these offenses (hereinafter "Target Offenses").

7.     I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents and investigators; from my discussions with witnesses involved in the investigation; and from review of records

3

and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another agent, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements, are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing a search warrant authorizing the search of the aforementioned cellular telephones, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## BACKGROUND REGARDING CELLULAR TELEPHONES

8.     I have had both training and experience in the investigation of narcotics and crimes. Based on my training, experience, and knowledge, I know the following:

9.     I am familiar with the ways in which traffickers of cocaine and other controlled substances conduct their business, including, but not limited to, their methods of importing, distributing, and storing of controlled substances as well as their collection of proceeds from drug trafficking.

10.    Based on my knowledge, training, and experience, individuals committing controlled substances offenses and crimes of violence frequently use cellular telephones, communication devices, and other electronic media storage to

4

further their illegal activities. Based upon your affiant's training, experience, and participation in this and other narcotics investigations, I know the following:

a. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. Motorola cellular phones have digital storage capacity.

b. Individuals engaged in narcotics distribution often use digital storage devices to maintain telephone number "contact lists" of individuals who are engaged in violations of narcotics laws, including narcotics suppliers and customers.

c. It has been my experience that individuals engaged in the distribution of controlled substances often use digital devices to take and store photographs showing the controlled substances that they possess and distribute.

d. Based on my training and experience, individuals who commit narcotics crimes and crimes of violence often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

11. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846, and have been committed by. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

12.     Based upon an investigation by Special Agents of the FBI, North Carolina State Bureau of Investigation, and narcotics detectives with the Bertie County Sheriff's Office, (BCSO), Chowan County Sheriff's Office (CCSO), Perquimans County Sheriff's Office (PCSO), and Elizabeth City Police Department (ECPD), which has included information from confidential sources, controlled purchases, police reports, and surveillance, your affiant states that there is probable cause to believe that (i) Levar LEARY and others are engaged in the commission of violations of federal law, to wit: distribution of and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841 and conspiracy to commit such offenses, as well as money laundering, in violation of 18 U.S.C. §§ 1956, 1957and conspiracy to commit such offenses.

13.     Since approximately 2017, FBI, federal, state and local law enforcement agents have been investigating the drug trafficking and money laundering activities of Levar LEARY.  Specifically, through surveillance, open source reporting, law enforcement intelligence, and confidential sources of information, law enforcement learned that LEARY was engaged in the importation of cocaine, marijuana, and heroin into North Carolina and that LEARY was responsible for the sale of kilogram quantities of cocaine, multi-pound quantities of marijuana and, ounce quantities of heroin.

14.     In early 2019, investigators cultivated a confidential human source, hereafter CS-1, who provided historical and current information regarding LEARY's

6

involvement in drug trafficking and money laundering. CS-1 also provided several names and telephone numbers of persons allegedly supplied by LEARY including Alexander WILLIAMS, Fred ROBBINS, Johnny JORDAN Jr., Maurice WYNN as well as others.

## CONTROLLED PURCHASES OF COCAINE MAURICE WYNN

15. On October 16, 2019, a controlled purchase of cocaine was made from WYNN by CS-1. CS-1 participated in a consensually recorded telephone conversation with WYNN to set up and coordinate the purchase. CS-1 purchased approximately 54 grams of cocaine for $2500 from WYNN's residence on Glover's Cross Road in Colerain, NC.

16. On December 16, 2019, another controlled purchase of cocaine was made from WYNN by CS-1. CS-1 participated in a consensually recorded telephone conversation with WYNN to set up and coordinate the purchase. CS-1 purchased approximately 83 grams of cocaine for $3750. CS-1 met WYNN near an intersection in Colerain to conduct the purchase.

## ARREST OF MAURICE WYNN

17. On January 19, 2021 a federal arrest warrant was issued in the Eastern District of North Carolina charging WYNN with violating Title 21 U.S.C Section 846 (Conspiracy to Distribute and Possess With the Intent to Distribute a Quantity of Cocaine) and Title 21 U.S.C Section 841(a)(1) (Distribute a Quantity of Cocaine).

18. In February of 2021, CS-1 advised that WYNN moved from his address on Glover's Cross Road in Colerain, NC to 328 Quebec Road, Colerain, NC. CS-1 also

provided a new telephone number for WYNN, 252-209-1011. WYNN further advised that WYNN sells $20 and $30 bags of crack cocaine out of his house to various customers. When WYNN is away from the house working for a tree service company, his wife sells the crack cocaine to customers.

19.     On February 18, 2021, WYNN was arrested in Winton, NC. Prior to his arrest in Winton, NC, investigators attempted to locate and arrest WYNN at his residence on Quebec Road in Colerain, NC. WYNN's wife advised that WYNN had left for work prior to investigators arriving. WYNN's wife agreed to call WYNN so SA Hedges could speak to WYNN. WYNN's wife called him at cellular telephone number 252-209-1011. SA Hedges and WYNN agreed upon a location for WYNN to stop and wait for law enforcement. WYNN stopped and was picked up by law enforcement and transported to the Hertford County Sheriff's Office in Winton, NC. A few minutes later, SA Hedges and Task Force Officer William Williams arrived and took custody of WYNN. WYNN had Device 1 with him at the time of his arrest.

20.     In my knowledge, training, and experience I know that individuals suspected of criminal activity often utilize cellular telephones to communicate with one another and computers and other electronic devices to store information related to their criminal activity. These suspects may also change cellular telephone numbers, maintain multiple cellular telephone numbers to provide to co-conspirators, and/or maintain multiple cellular telephone numbers to avoid law enforcement detection. More specifically in this investigation, your affiant respectfully asserts that cellular telephones, computers, and other electronic devices appear to be central

in the distribution of narcotics and money laundering in northeastern North Carolina.

21.     The Device is currently in the lawful possession of the FBI. As noted above, it came into the FBI's possession through the execution of a federal arrest warrant. The Device is currently in storage at the FBI Manteo Resident Agency located at 201B Etheridge Road, Manteo, NC 27954. In my knowledge, training, and experience, I know that the Device has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

22.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving,

and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to

the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer or cellular telephone is evidence may depend on other information stored on the computer or cellular telephone and the application of knowledge about how a computer or cellular telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to

employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

27.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

CHRISTOPHER A. HEDGES
Special Agent
Federal Bureau of
Investigation

On this 22nd day of February 2021, ___SA Christopher A. Hedges___ appeared before me via reliable electronic means, was placed under oath and attested to the contents of this Affidavit.

KIMBERLY A. SWANK
United States Magistrate Judge

14

## ATTACHMENT A

The property to be searched is:

    a. A blue Motorola cellular telephone, Type N57C9, in a black case, labeled Case Number 245D-CE-2153493, Evidence Number 1B 204, collected from Maurice WYNN, hereinafter "Device 1."  Device 1 is currently located at the FBI Manteo Resident Agency, 201B Etheridge Road, Manteo, NC 29754

1

# ATTACHMENT B

## Property to Be Searched and/or Seized

This warrant authorizes (i) the search of the property identified in Attachment A for only the following and (ii) authorizes the seizure of the items listed below only to the extent they constitute the following:

(a)  evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846 ("subject violations"), which were committed by WYNN and/or his co-conspirators.

Subject to the foregoing, the items authorized to be seized include the following:

1.  contents of the telephone directory;
2.  information and communications in the form of text, photographs, and/or images;
3.  phone call logs;
4.  stored communications and information to include voicemail, or any other memory feature;
5.  lists of customers and related identifying information;
6.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;
7.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
8.  all bank records, checks, credit card bills, account information, and other financial records;
9.  evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;
10.  records of Internet Protocol addresses used; and
11.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence,

1

fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.